UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **M. ISABEL VARNADO**, |
| Plaintiff, |
| v. |
| **SAVE THE CHILDREN**, |
| Defendant. |

Case No. 1:18-cv-00752 (TNM)

# MEMORANDUM OPINION

M. Isabel Varnado has sued her former employer, Save the Children, alleging a hostile work environment and racial discrimination. Save the Children now moves for summary judgment. For the following reasons, the Court will grant its motion.

## I.

As the Court must at this stage, it sets out the facts and inferences in the light most favorable to the Plaintiff. *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

Save the Children is a non-governmental organization that provides relief and support to children around the world. Def.'s Statement of Undisputed Material Facts ("DMF"), ECF No. 21-2 ¶ 1; Pl.'s Resp. Mot. in Opp. ("Pl.'s Mot."), ECF No. 24 at 1.[1] Within Save the Children,

---

[1] The Court notes that Ms. Varnado did not file a proper statement of material facts in dispute under Local Civil Rule 7(h). In her Opposition, she states that she "summarily dispute[s]" Paragraphs 40–243 of the Defendant's Statement of Material Undisputed Facts. Pl.'s Mot. at 13. But that is not enough. A plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jackson v. Finnegan*, 101 F.3d 145, 154 (D.C. Cir. 1996). Rule 7(h) requires that "[a]n opposition to motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."

U.S. Programs Finance ("USP Finance") is responsible for managing (1) grants from outside donors and (2) sub-award contracts with schools and community programs. DMF ¶ 6, Pl.'s Mot. at 12.

Save the Children hired Ms. Varnado, who is African American, to be an Associate Director of Financial and Sub-Award Management within USP Finance. Pl.'s Mot. at 3, 5. During her first performance review, Ms. Varnado received positive feedback from her supervisor, Juliana Brannan. *Id.* at 2. The next month, a finance manager on Ms. Varnado's team gave notice, and Save the Children tried to hire someone temporarily to cover that manager's immediate responsibilities. Pl.'s Mot. at 5. When that proved difficult, Ms. Varnado offered to take on the role to learn more about it, and she moved to Lexington, Kentucky, to do so. *Id.* Upon arrival, she received training from another finance manager about the role. *Id.*

Even in Ms. Varnado's telling, this arrangement was not a happy one. First, Ms. Varnado was late to a conference call about her finance manager responsibilities. *Id.* Then, she had issues using a risk assessment tool. *Id.* More, she claims that she was not properly trained for her role as a finance manager. *Id.* at 6. Ultimately Save the Children fired her. *Id* at 6.

After receiving her Notice of Right to Sue Letter from the EEOC, Ms. Varnado, proceeding *pro se*, sued Save the Children. Compl. at 2. She claims that Save the Children (1) subjected her to a hostile work environment and (2) racially discriminated against her when it fired her. *See generally* Compl. at 2.

**II.**

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A factual dispute is material if it could alter the outcome of the suit under the substantive governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

"A document filed *pro se* is to be liberally construed." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). When a *pro se* plaintiff brings an action, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

### III.

### A.

According to Ms. Varnado, she was subjected to a hostile work environment at Save the Children. Pl.'s Mot. at 6. To support this claim, she points to three specific conversations with her supervisor, Ms. Brannan:

- When Ms. Brannan met Ms. Varnado for the first time, Ms. Brannan remarked "you're not at all like I pictured." *Id.*

3

- Ms. Varnado once told Ms. Brannan that she was afraid of a truck that she saw flying confederate flags in West Virginia. *Id.* In response, Ms. Brannan told her that she had no reason to be afraid in West Virginia, but she—Ms. Brannan—would have reason to be afraid if she was in Los Angeles or Detroit. *Id.*
- In a conversation including another co-worker, Ms. Brannan told Ms. Varnado that Ms. Varnado would be the only one that agreed that the Washington Redskins had an inappropriate mascot. *Id.* She told Ms. Varnado that she did not understand why people needed to be so politically correct. *Id.*

To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up); *see also Baloch v. Kempthrone*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The Court considers "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014). The Court assesses "the timeline of events as a whole," to determine whether, in totality, the facts may plausibly support a conclusion that the employer "alter[ed] the conditions of [her] employment and create[d] an abusive working environment." *Id.* (cleaned up).

"Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other." *Id.* But here Ms. Varnado has shown neither. Although insensitive, none of the three comments meets the high bar of "severe" or "offensive" conduct that might create an objectively abusive environment.

4

*See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment.").

Caselaw from this Circuit supports this conclusion. For example, in *George v. Leavitt*, the plaintiff brought a hostile work environment claim, citing confrontations with her co-workers and alleging that she was told to "go back where she came from" multiple times. 407 F.3d 405, 416–17 (D.C. Cir. 2005). The D.C. Circuit found that, even taking the plaintiff's allegations as true, a reasonable jury could not conclude that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Id.* at 416 (cleaned up). According to the Circuit, the facts as alleged by the plaintiff were "exactly the sort of 'isolated incidents' that the Supreme Court has held cannot form the basis for a Title VII violation." *Id.* at 416–17 (cleaned up). *See also Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing hostile work environment claim where plaintiff's accent was criticized, he was told he was easy to replace with an American and that his supervisor would not hire other Africans); *Singh v. U.S. House of Reps.*, 300 F. Supp. 2d 48, 54–57 (D.D.C. 2004) (holding employer's treatment of employee did not amount to hostile work environment where employee was humiliated during meetings, screamed at and told to "shut up and sit down," and treated in manner that was "constantly hostile and hypercritical").

Ms. Varnado also claims that she was "continuously subjected to . . . racially insensitive comments . . . by Juliana Brannan." *See* Compl. at 2. But that statement is too vague and conclusory to contribute meaningfully to her claim, and she offers no evidence to support it. *See Brady v. Livingood*, 456 F. Supp. 2d 1, 11 (D.D.C. 2006) (dismissing hostile work environment claim where plaintiff alleged only "[v]ague, conclusory statements") (citation omitted), *aff'd sub*

5

*nom. Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). So the Court will not consider it.

The three conversations that Ms. Varnado does identify, evaluated as a whole, were no doubt awkward and unpleasant, but they do not support a conclusion that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201.

**B.**

The Court analyzes Ms. Varnado's racial discrimination claim using the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this formula, an employee must first make out a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The employer must then come forward with a legitimate, nondiscriminatory reason for the challenged action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If the employer meets this burden, the *McDonnell Douglas* framework falls away, and the factfinder must decide the ultimate question: whether the employee has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12 (1993). The employee can survive summary judgment by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for discrimination. *Brady*, 520 F.3d at 494.

When the employer properly presents a legitimate, nondiscriminatory reason, the Court "need not—and should not—decide whether the plaintiff actually made out a *prima facie* case" because it should focus only on the third prong of *McDonnell Douglas*. *Id*. But the D.C. Circuit recently held that "the *Brady* shortcut applies only if the parties properly move past the second

*nom. Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). So the Court will not consider it.

The three conversations that Ms. Varnado does identify, evaluated as a whole, were no doubt awkward and unpleasant, but they do not support a conclusion that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201.

**B.**

The Court analyzes Ms. Varnado's racial discrimination claim using the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this formula, an employee must first make out a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The employer must then come forward with a legitimate, nondiscriminatory reason for the challenged action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If the employer meets this burden, the *McDonnell Douglas* framework falls away, and the factfinder must decide the ultimate question: whether the employee has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12 (1993). The employee can survive summary judgment by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for discrimination. *Brady*, 520 F.3d at 494.

When the employer properly presents a legitimate, nondiscriminatory reason, the Court "need not—and should not—decide whether the plaintiff actually made out a *prima facie* case" because it should focus only on the third prong of *McDonnell Douglas*. *Id*. But the D.C. Circuit recently held that "the *Brady* shortcut applies only if the parties properly move past the second

*nom. Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). So the Court will not consider it.

The three conversations that Ms. Varnado does identify, evaluated as a whole, were no doubt awkward and unpleasant, but they do not support a conclusion that her employer subjected her to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201.

**B.**

The Court analyzes Ms. Varnado's racial discrimination claim using the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this formula, an employee must first make out a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The employer must then come forward with a legitimate, nondiscriminatory reason for the challenged action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If the employer meets this burden, the *McDonnell Douglas* framework falls away, and the factfinder must decide the ultimate question: whether the employee has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–12 (1993). The employee can survive summary judgment by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for discrimination. *Brady*, 520 F.3d at 494.

When the employer properly presents a legitimate, nondiscriminatory reason, the Court "need not—and should not—decide whether the plaintiff actually made out a *prima facie* case" because it should focus only on the third prong of *McDonnell Douglas*. *Id*. But the D.C. Circuit recently held that "the *Brady* shortcut applies only if the parties properly move past the second

step." *See Figueroa v. Pompeo*, — F.3d —, No. 18-5064, 2019 WL 2063562, at *5 (D.C. Cir. May 10, 2019). That is, a court must be careful not to relieve the employer of its burden "to articulate a legitimate, nondiscriminatory reason for its action." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016).

So the first question is whether Save the Children has offered "a legitimate, nondiscriminatory reason" for firing Ms. Varnado. According to Save the Children, it fired her because despite the training and support it gave her, she was not meeting its expectations for an Associate Director. Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 21-1 at 6. Specifically, it alleges that Ms. Varnado "showed a lack of understanding of the sub-award process and basic [Generally Accepted Accounting] principles by reversing debit and credit entries in the Agresso[2] system, failing to attach back up documentation to her Agresso entries, failing to correctly complete risk assessments, and continuing to ask her subordinates for guidance although Ms. Brannan had directed that Plaintiff direct her questions to Ms. Brannan." *Id.* at 6–7.

Applying *Figueroa*'s four factors, the Court finds that Save the Children has articulated a legitimate, nondiscriminatory reason for the termination. First, Save the Children has produced evidence—to support its claim—that a factfinder could consider at trial: testimony from both Ms. Brannan and Ms. Varnado about Ms. Varnado's job performance. *Figueroa*, 2019 WL 2063562 at *5. Second, if a factfinder credited Save the Children's evidence, it could reasonably find that Save the Children's action was motivated by a nondiscriminatory reason. *Id.* That is, if a jury believed that Ms. Varnado had made these mistakes, then it could reasonably find that Save the Children was not motivated by a discriminatory reason.

---

[2] Agresso is the commercially available accounting system that Save the Children uses. *See* DMF ¶ 53.

7

Third, Save the Children's explanation is legitimate. *Id*. Save the Children's proffered reason is facially credible given this record. *See Bishopp v. District of Columbia*, 788 F.2d 781, 788 (D.C. Cir. 1986). Ms. Varnado does not materially dispute the performance problems that Save the Children identifies. For example, Ms. Varnado does not dispute that she completed a risk assessment incorrectly. She only argues that she "fixed issues when raised by Ms. Brannan." Pl.'s Mot. at 5.

Finally, Save the Children has produced a "clear and reasonably specific explanation." *Figueroa*, 2019 WL 2063562 at *6. Ms. Varnado had a "full and fair opportunity" to attack Save the Children's explanation as pretextual. *Id.* She could have produced evidence that she did not reverse debit and credit entries in the Agresso system or that she did attach back up documentation to her Agresso entries. She could have insisted that she correctly completed the relevant risk assessments or contested Save the Children's claim that she asked her subordinates for guidance even after Ms. Brannon told her to ask only her questions. But she has not done so.

In sum, Save the Children has proffered admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions. Its evidence raises a triable issue of fact about intentional discrimination and provides Ms. Varnado with a full and fair opportunity for rebuttal.

The Court now turns to the third prong of *McDonnell Douglas*, which considers whether Ms. Varnado has produced enough evidence to support a finding that her employer's asserted nondiscriminatory reason was pretextual and that Save the Children intentionally discriminated against her based on her race.

To show that an employer's stated reasons were pretextual, plaintiffs may offer many types of evidence, including "the employer's better treatment of similarly situated employees

outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

Ms. Varnado first argues that she was qualified for her job, citing her own professional qualifications and the relevant job description. Pl.'s Mot. at 9. But Save the Children does not claim that Ms. Varnado was unqualified. It claims that it fired her because it believed that she did not understand the sub-award process and basic accounting principles. Def.'s Mot. at 6. Save the Children, in fact, probably agrees that she appeared qualified for the job, and that's why it hired her.

According to Ms. Varnado, she did not have enough training for the sub-award portfolio daily management tasks or with the Agresso technology. Pl.'s Mot. at 9. This argument also fails. True, she may have been able to improve given more training or time. But that fact does not mean that Save the Children is lying about why it fired her. Ms. Varnado suggests that Save the Children overreacted and adopted a hair-triggered approach to her mistakes. But "[c]ourts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it." *Brady*, 520 F.3d at 496 (cleaned up).

The question is not whether Ms. Varnado could be a successful Associate Director. Rather, it is whether Save the Children "honestly and reasonably believed" that she did not understand the sub-award process and basic accounting principles. *See id.* Although Ms. Varnado claims that her termination was racially tainted and that she was fired prematurely, she produces no evidence that her employer's decision was dishonest.

9

Ms. Varnado also points to Ms. Brannan's three comments, discussed above, to show discriminatory motive. To be sure, race-based comments are material to the issue of pretext. *See Morris v. McCarthy*, 825 F.3d 658, 670 (D.C. Cir. 2016). But it is not obvious that Ms. Brannan's comments—however awkward—reveal any racial animus. *See Hairston v. Vance-Cooks*, 773 F.3d 266, 274 (D.C. Cir. 2014) (declining to infer racial animus when statements were "neither explicitly racial nor infused with racial undertones based on common usage").

For instance, when Ms. Brannan told Ms. Varnado "you're not at all like I pictured," it is not clear what she had expected Ms. Varnado to look like or that it was a bad thing that she appeared different than Ms. Brannan expected.[3] And Ms. Brannan's statements about the Washington Redskins could have been referring to Ms. Varnado's political views, not her race. As for the conversation about whether Ms. Varnado should fear a truck with a confederate flag, Ms. Brannan told her that she should *not* be afraid. And Ms. Brannan's statement, while insensitive, does not necessarily reveal personal animus against African Americans. These comments fall short of showing any discriminatory motive.

In any event, the D.C. Circuit has affirmed grants of summary judgment to employers despite *obviously* racially charged statements. *See, e.g.*, *Hampton v. Vilsack*, 685 F.3d 1096, 1101 (D.C. Cir. 2012) (affirming a grant of summary judgment even though first-line supervisor described the plaintiff using a derogatory racial slur); *Waterhouse v. District of Columbia*, 298 F.3d 989, 996–97 (D.C. Cir. 2002) (affirming a grant of summary judgment even though a supervisor said that the office had "too many white managers").

---

[3] For instance, Ms. Brannan could have been remarking on Ms. Varnado's height. *See* Varnado Dep., ECF 21-4 at 102 (explaining that she responded to Ms. Brannan's comment by saying "I know, I'm 6'1 and brown. My voice definitely doesn't indicate that.").

But even if Ms. Brannan's statements were about Ms. Varnado's race, "an isolated race-based remark unrelated to the relevant employment decision [does] not, without more, permit a jury to infer discrimination." *See Morris*, 825 F.3d at 669. Here, none of the comments that Ms. Varnado has identified have anything to do with her employment, her professional qualifications, or her job performance.[4]

Ms. Varnado has not put forward enough evidence for a reasonable jury to find that her employer's legitimate, nondiscriminatory reason was not the actual reason for her termination and that her employer actually discriminated against her based on her race.[5]

**IV.**

For these reasons, the Defendant's Motion for Summary Judgment will be granted. A separate order will issue.

Dated: May 21, 2019                                    TREVOR N. McFADDEN, U.S.D.J.

---

[4] In a deposition, Ms. Varnado suggested that white employees were treated better than she. *See, e.g.*, Varnado Dep. at 115. In her Opposition, she claims, without citation or further explanation, that she "was not allowed to conduct discovery on this particular issue." Pl.'s Mot. at 7. The Court, however, did not restrict the scope of discovery, and Ms. Varnado could have conducted discovery to support this claim. In any event, she does not argue disparate treatment in her briefing, so the Court has not considered it. *See, e.g.*, *Bamdad v. Drug Enf't Admin.*, 617 F. App'x 7, 9 (D.C. Cir. 2015) ("There is a difference between liberally construing ambiguities in *pro se* plaintiffs' complaints . . . and completely rewriting portions of the complaint." (citation omitted)).

[5] Save the Children emphasizes that Ms. Brannan hired Ms. Varnado less than a year before deciding to fire her. Def.'s Mot. at 14. The D.C. Circuit has said "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to that person an invidious motivation that would be inconsistent with the decision to hire, especially when the firing has occurred only a short time after the hiring." *Vatel v. Alliance of Auto Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) (cleaned up). Given the potential that Ms. Brannan did not know that Ms. Varnado was African American at the time of hiring, *see* Pl.'s Mot. at 6 ("You're not at all like I pictured."), the Court will not rely on the "same actor" inference.